## SANTOS P. ORTIZ v. CAROLINA NAVARRO.

### No. 580.

1. **Breach of Promise of Marriage—Pleading and Proof.**—It is not necessary, in an action for breach of promise of marriage, for the plaintiff to allege or prove specifically that she objected to the act of the defendant in marrying another woman.

2. **Same.**—In such an action it is admissible for plaintiff to show the grief and anguish caused her by defendant's conduct in breaking his promise to her and engaging himself to another woman.

3. **Same—Proof of Defendant's Pecuniary Condition.**—In an action of this character, the jury may consider the pecuniary as well as the social standing of the defendant, as tending to show the condition in life which the plaintiff would have secured by the marriage, and such pecuniary standing may be proved by reputation.

4. **Same—Tender of Marriage.**—It is sufficient if plaintiff show that defendant has violated his promise by refusing to marry her, without averring or proving an offer on her part to marry the defendant. The principles of tender do not apply to actions of this character.

5. **Practice in Trial Court—Amendment.**—The manner in which an amendment of the pleadings is made, though violative of the rules, is not a cause for reversal where it clearly appears that it was not prejudicial to the appellant.

6. **Practice on Appeal—Bill of Exceptions.**—The appellate court will not consider an exception to the ruling of the trial court upon a question asked a witness, where there is no bill of exception showing that the ruling was objected to; and where the objection to such question is sustained, no injury is shown, unless the bill of exceptions discloses what the answer of the witness would have been.

7. **Evidence—Conclusion of Witness.**—A witness who was present at an interview between plaintiff and defendant was asked: "From all that passed between plaintiff and defendant when they returned the rings in your presence and hearing, what did you understand their acts and words to relate to?" *Held,* objectionable, as calling for the conclusion of the witness.

8. **Charge of Court—Weight of Evidence.**—An instruction, that if the jury believed from the evidence that plaintiff requested and obtained from defendant the letters written during their correspondence, and then voluntarily destroyed them before instituting the suit, they could presume such letters contained matters of evidence in favor of appellant and against the right of plaintiff to recover is on the weight of evidence.

APPEAL from Webb. Tried below before Hon. A. L. MCLANE.

*Bethel Coopwood*, for appellant.—1. The petition does not aver that plaintiff was at the city of Laredo, Texas, on the 14th day of November, 1893, or that she then and there offered to defendant in person to marry him, and such facts not being stated by direct and positive averments, can not be derived by argument and inference. Mims v. Mitchell, 1 Texas, 443, 446; Witlock v. Castro, 22 Texas, 108, 113; Yale v. Ward, 30 Texas, 17, 22; Perry v. Herbert, 8 Texas, 1; Catlin v. Glover, 4 Texas, 151.

2. All amendments of the petition must be made by a separate writing, as an amended original petition, and filed in lieu of and substitution for the original; and all supplements must be made by separate instrument, and it was error to allow the original petition on file to be amended by interlineation made therein. Dist. Court Rules, numbers 8–15.

3. The trial being had in the city of defendant's residence, the actual facts touching his real financial condition could easily be shown by proper testimony, and it was not competent to introduce proof of mere reputation to establish such facts.

4. Marriage, to constitute the breach, must be before the breach by refusal; the cause of action for damages accrues on refusal to be married on the day fixed. Reed v. Clark, 47 Cal., 194; Shellenbarger v. Blake, 67 Ind., 76; Cheney v. Arnold, 15 N. Y., 345.

5. A charge asked, correct and proper in its application to the facts of the case, must be given; and it is the duty of the court to charge the jury as to presumptions of law upon the facts in evidence; and all things are presumed in odium of a spoiler. Cheatham v. Riddle, 8 Texas, 167, 168; Pizarro, Hibberson, and Young, claimants, 2 Wheat., 24.

*Marshall Hicks* and *E. A. Atlee*, for appellee.—1. While it is true that amendments should be made by a separate writing, the violation of this rule is not reversible error unless appellant shows some injury, such as surprise, and the discretion exercised by the court will not be revised by the appellate court unless some injury is made to appear.

2. Under appellee's petition, she had the right to prove every fact tending to show her sincere regard for the defendant, and her humiliation and mortification resulting from the breach of the contract, and every fact which tended to show laceration of her feelings, and her condition, mental and physical, produced by hearing that the defendant had broken his contract.

3. It is competent in actions for breach of promise to show the financial condition of defendant by general reputation. 2 Am. and Eng. Encyc. of Law, 526, 527.

4. A witness can not state his understanding or impression as to what certain conversation or acts of the parties relate to; he must state the facts, and the jury can draw their own conclusions.

NEILL, ASSOCIATE JUSTICE.—This action is for a breach of promise of marriage. The petition of the appellee, who was plaintiff below, alleges, that on or about the 20th day of May, 1893, at the request of appellant, she promised to marry him on or about the 14th day of November, 1893, in Laredo, Texas, and that in consideration of her promise the appellant faithfully promised her that he would marry her on or about the 15th day of November, 1893, in Laredo, Texas. That she has always from the time of making said promise been able and willing and offered to marry appellant. But that appellant, not regarding his said promise, failed and refused to marry her on the 14th of November, 1893, or at any time thereafter; and, in utter disregard of his promise and contract of marriage, and without appellee's consent, the appellant, on the 15th day of May, 1894, married another woman. That by the breach of said marriage contract, she lost an advantageous matrimonial connection with appellant; her affections have been blighted; her feelings larcerated and spirits wounded, and much mental distress and humiliation caused her, to her damage in the sum of $10,000.

The appellant in his answer interposed a number of special exceptions to the petition; pleaded a general denial, and specially, that if there was any agreement or promise on his part to marry appellee, it was, for reasons sufficient and satisfactory to both parties, dissolved by mutual consent prior to the 4th day of November, 1893, and that thereafter there was no promise or agreement between them to marry.

Upon the trial a verdict was rendered in favor of appellant for $2000, upon which the judgment was entered from which this appeal is prosecuted.

The proof shows conclusively that the appellant, in May, 1893, promised to marry the appellee on or about the 15th day of November of that year; that she loved him, accepted his proposal of marriage, never consented to dissolve the promise, and was ready and willing to marry the appellant at said time fixed for their marriage, and ever thereafter, until in May, 1894, when appellant placed it out of her power to marry him by wedding another woman. That by the breach of appellant's promise to marry appellee, her affections were blighted, her spirits wounded and humiliated, and she was caused to suffer great mental distress, and a marriage lost which would have been advantageous to her.

*Conclusions of Law.*—1. The petition stated a good cause of action, and the court did not err in overruling appellant's exceptions to it. The error in the court's allowing appellee to amend her original petition by interlining therein the words "with defendant" was harmless. It was unnecessary to insert the words complained of, for the meaning of the paragraph in which they were written was the same before this insertion that it was afterwards. The proper practice would have been to supply the words, if deemed by the pleader essential to the

statement of cause of action, by a trial amendment, which could have been done, under leave of the court, granted as a matter of course. The manner in which the amendment was made, though violative of a rule, is not a cause of reversal when it clearly appears that it was not prejudicial to appellant.

2. The allegation of the marriage of appellant to another was simply one showing that he had broken his promise to marry the appellee, which, coupled with the fact that he was at the time of its consummation engaged to marry her, constituted a cause of action. Therefore the petition was not subject to demurrer on account of such allegation. The allegations in the petition, taken as a whole, are utterly inconsistent with the fact that appellee released him from his promise and consented to his marriage with another. It was not necessary for her to allege nor prove specifically that she objected to his marrying the other woman. If a woman whom a man has promised to marry, knowing that he has been false to his promise by engaging to marry another, must go to him and object to and protest against it, in order to entitle her to an action against him, no woman who has any respect for herself could recover on a breach of promise to marry, for no one would degrade and humiliate herself by avowing such objection or protest. It was sufficient that the petition does not show that she released him from his promise.

3. It appears from one of appellant's bills of exception that appellee offered to prove by a witness, over appellant's objections, that appellee, upon learning the fact that appellant had married, became ill and was sick for a long time; and that the witness testified as to such matters. The bill of exception does not show what the testimony of the witness was as to the matters objected to, and the statement of facts does not disclose any testimony of the witness in relation to the fact of appellant's marriage, or anything about appellee's becoming sick on hearing of it. The witness did testify that appellee was much affected when she learned appellant was going to marry another, and that she became ill on account of it, and cried much the day she learned it, and all next day and night. We do not think that the bill of exceptions relates to this testimony. If, however, it does, we believe that it was admissible to show the grief and anguish caused appellee by appellant's breaking his promise to her and engaging himself to marry another woman.

4. This court will not consider an exception to the ruling of the court upon a question asked a witness, when there is no bill of exception showing that the ruling was objected to.

5. A witness who was present during an interview between the parties was asked the following question: "From all that passed between plaintiff and defendant when they returned the rings in your presence and hearing, what did you understand their acts and words to relate to?" It was objected to, upon the ground that it asked for the conclusion of the witness. The objection was sustained, and we

think properly. Besides, the bill of exceptions does not show what the witness would have answered. Therefore no injury is shown the appellant by the court's ruling, if erroneous.

6. The return by appellee to appellant of his ring and letters did not show as a matter of law that she had released him from his promise to marry her. It was only a fact to be considered with all the testimony on that issue, and its probative force was for the jury to determine.

7. In actions of this character, it is proper for the jury to consider the pecuniary as well as social standing of the defendant, as tending to show the condition in life which the plaintiff would have secured by the marriage. 3 Suth. on Dam., 323. His pecuniary standing may be proved by reputation. Chellis v. Chapman, 11 L. R. A., 785. Therefore it was not error for the court to allow the appellee to prove that he was reputed to be the owner of property, and that he and his family moved in the best circles of society. No proof was offered as to the reputation of his family in relation to property, as is intimated by appellant's eighth assignment of error.

8. The eight letters written by appellant to appellee were relevant, in that they showed that, if appellant wrote the truth, he was deeply in love with appellee, and expected to make her his wife. It is not contended that the letters written by appellee would tend in any way to disprove anything stated in appellant's letters to her, or that they contained anything that would have been of advantage to him on the trial. It having been shown that they were destroyed, he could have testified to their contents, or proved their contents by the appellee, if he desired to do so. In fact, he did testify as to the contents of the letter he wrote to appellee which had been destroyed; and as to the contents of her letter in reply. From his own statement of the contents of those letters, it appears that he sought to break the engagement on a trivial pretext, and that appellee answered in a spirit of kindness and love. But he did not claim that she assented to annulling the engagement. The appellant asked the court to instruct the jury, that if they believed from the evidence that appellee requested and obtained from appellant the letters written by him during their correspondence, and then voluntarily destroyed them before instituting suit, that they could presume such letters contained matters of evidence in favor of appellant and against the right of appellee to recover. The charge would have been on the weight of evidence, and was correctly refused.

9. There was no error in the court's refusing to instruct the jury, that if they believed from the evidence no particular day for the marriage was agreed upon, it devolved upon appellee to prove that she requested appellant to fix the day, and that he refused, before she could recover. In an action for a breach of promise to marry, it is sufficient if the plaintiff shows that defendant has violated his promise by refusing to marry her, without averring or proving an offer on her part to marry defendant. Kelley v. Brennan, 25 Atl. Rep., 347. It

can hardly be expected that a lady should say to a gentleman, "Sir, I am ready to marry you; pray fix the day and marry me." It is not in the nature of a woman to talk that way, however anxious and willing she may be. The principles of tender do not apply to actions of this character.

10. No error is pointed out or indicated in appellant's assignments which complain of the charge of the court. If there is any error in it, it was the appellant's duty to specify it in his assignments of error. All the elements of damages submitted to the jury were such as naturally and proximately arose from the breach of appellant's promise. Daggett v. Wallace, 75 Texas, 352. It was for the jury to assess the damages, and we are not prepared to hold that their verdict is excessive.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered March 13, 1895.

Writ of error refused.